TRINITY CHURCH OF INFINITE SCIENCE OF MINNE-
APOLIS, MINNESOTA, v. FIRST SPIRITUALIST
CHURCH AND OTHERS.
STATE SPIRITUALIST ASSOCIATION OF MINNESOTA,
RESPONDENT.[1]

No. 34,067.

November 16, 1945.

*Arthur Markve* and *John Ott,* for appellant.
*P. V. Dooley* and *Mart M. Monaghan,* for respondent.

[1]Reported in 20 N. W. (2d) 534, 21 N. W. (2d) 611.

Matson, Justice.

Appellant brought action to register the title to the church premises located at 616 East Fifteenth street, Minneapolis, Minnesota, under the Torrens act (Minn. St. 1941, §§ 508.01 and 508.83 [Mason St. 1927, §§ 8247 and 8329]). Pursuant to the report of the examiner of titles, the summons named as defendant, among others, the First Spiritualist Church and the State Spiritualist Association of Minnesota.

Appellant was first incorporated in 1906 pursuant to the religious corporation statute (Minn. St. 1941, § 315.01, subds. 1, 2 [Mason St. 1927, § 7963]), under the name of "Band of Peace Spiritualist Society," with its charter expressly providing "that it shall belong to and be attached to the Minnesota State Spiritualist Association." In 1910, appellant amended its articles to provide that its name should be changed to the "First Spiritualist Church of Minneapolis, Minnesota," and further to provide "that it shall belong to and be attached to the Minnesota State Spiritualist Association and to the National Spiritualist Association of Washington, D. C." In 1912, appellant adopted a new constitution and set of by-laws wherein it was again expressly stated that "this church * * * shall be affiliated with" the aforesaid state and national associations. The preamble declares that the constitution was adopted "to perpetuate, and improve said Church in its work for the upliftment of humanity and the propaganda of the Religion of Spiritualism * * *." Article 11 of the said constitution and by-laws reads as follows:

"Article 11.

"Protection of Charter.

"If this Church should cease to hold any regular meetings for the period of one year, or the membership should fall below seven [7] then such property, money etc. in its possession shall be turned over to the Minnesota State Spiritualist Association to be held in trust by them until such time as this Church shall resume active work."

Appellant, under its amended name of "First Spiritualist Church," obtained title to the church property by a deed of conveyance dated January 2, 1917, and ever since has been the owner thereof.

Under the name last above mentioned, appellant continued to operate until April 6, 1943, when an attempt was made to amend its articles of incorporation (and constitution) in the following manner:

(1) By changing the corporate name to "Trinity Church of Infinite Science of Minneapolis, Minnesota," and

(2) By changing its affiliation from the State and National Spiritualist Associations to the Federation of Churches of Infinite Science.

The church minutes clearly establish that the change of name was strictly incidental to, and part and parcel of, the effort to accomplish a change of affiliation. The minutes of appellant's board of trustees for November 3, 1942, contain a resolution "that we start legal proceedings to declare ourselves free of the State and National Spiritualist Association and to affiliate ourselves with Infinite Science, * * *." At the annual meeting of the church members on January 5, 1943, the following resolution was adopted, with some of the members dissenting, by a majority vote:

"This church shall be known as Trinity Church of Infinite Science, of Minneapolis, Minnesota, and shall be affiliated with Federation of Churches of Infinite Science, * * *."

This latter resolution was the basis for the attempted amendment of the articles on April 6.

The constitution and by-laws of the National Spiritualist Association provide in effect that, although all affiliated and subsidiary societies "shall have the utmost freedom * * * in the conduct of their affairs," nevertheless such constitution and by-laws "shall be the supreme law" governing all affiliates, and that any act or practice of an affiliate repugnant thereto "shall be null and void."

In their present form, neither the articles nor the constitution of either the national or state Spiritualist associations provides

for the discipline of a local congregation, or imposes a penalty consequent upon a withdrawal, or provides a method of compelling continued affiliations, or says what may be done if a congregation ceases to recognize such national or state Spiritualist associations.

The trial court found that the attempt of appellant to amend its articles to change its name and effect a transfer of allegiance was ineffective and illegal, and adjudged and decreed "that the applicant, Trinity Church of Infinite Science, whose true name is First Spiritualist Church of Minneapolis, Minnesota, is now the owner of an estate in fee in the property described," subject, however (in addition to certain other encumbrances), "to the rights of the State Spiritualist Association and the National Spiritualist Association, of which the applicant is a member," and further adjudged and decreed that the title be registered in accordance therewith. The appeal from said judgment and decree raises substantially the following questions:

(1) May a Spiritualist church congregation incorporated under § 315.01, subds. 1, 2 (§ 7963), whose articles of incorporation, as well as its constitution and by-laws, provide that said church shall belong to and be affiliated with certain specified state and national Spiritualist associations, by a majority vote, as against any dissenting member, amend its charter to effect a transfer of affiliation from such associations to a new organization?

(2) Does the mere act of affiliating with a state or national ecclesiastical organization on the part of a local church congregation, incorporated under the aforesaid statute, create and vest in such state or national organization a property right in and to the local congregation's real estate?

■ In considering the first issue, we are confronted at once with the undeniable fact that the church from its inception was dedicated not merely to the advancement of the religion of Spiritualism in general, but specifically through a definite affiliation with the Minnesota State Spiritualist Association and, by later amendment, also with the National Spiritualist Association as well. Further

to insure that there should be no diversion of the original purpose of advancing Spiritualism through the medium of said state and national associations, it was expressly provided by Article 11 of appellant's constitution and by-laws that the State Spiritualist Association should become the custodian of appellant's church property in the event that its church became dormant through inactivity or depletion of its members. What more could the church founders have done to declare their definite intent of dedicating the organization's effort, purpose, and property to the promotion of Spiritualism according to the practices or doctrine exemplified in the branch or general church organization represented by the state and national associations? Where the original and fundamental objectives are specifically linked for their realization with a certain general ecclesiastical organization with which the church is attached as an integral part by express provision, it is not the province of the court to determine if such objectives can be otherwise satisfactorily achieved through some other, though similar, organization. In matters spiritual, as distinguished from matters temporal, we will not question the wisdom of the church founders in their choice of religious doctrine, sect, ecclesiastical organization, or government. Clearly, appellant by its original dedication became so irretrievably affiliated with the state and national associations as to place a change of affiliation beyond the power of any majority, however large, as against a single dissenting member.

"* * * It is the law of all corporations, that a mere majority of its members cannot divert the corporate property to uses foreign to the purposes for which the corporation was formed. There is no difference between church and other corporations in this regard. Where a church corporation is formed for the purpose of promoting certain defined doctrines of religious faith, which are set forth in its articles of incorporation, any church property which it acquires is impressed with a trust to carry out such purpose, and a majority of the congregation cannot divert the property to other inconsistent religious uses against the protest of a minority, however small. The manner of use of the property of the church corporation,

within the range of its corporate powers, may be determined by the majority of the congregation, but no majority, even though it embrace all members but one, can use the corporate property for the advancement of a faith antagonistic to that for which the church was established and the corporation formed." Lindstrom v. Tell, 131 Minn. 203, 207, 154 N. W. 969, 971. See, Mattson v. Saastamoinen, 168 Minn. 178, 209 N. W. 648.

In the Mattson case, which involved a change by a Lutheran church organized in 1899 from an independent and unaffiliated status to that of affiliation with the Suomi Synod, the original articles of incorporation provided:

"Article IV. This corporation has decided to be independent of all other ecclesiastical authority, either of the Evangelical Lutheran Conference of Minnesota, or .elsewhere."

In 1912, however, without any amendment of the articles, the church assumed to affiliate with the Suomi Synod and accepted a charter, and thereafter its pulpit was occupied by Suomi pastors. This change of affiliation by acquiescence continued until 1923, when the articles were formally amended "by a majority but not unanimous vote" to eliminate the above Article IV by substituting therefor a provision recognizing affiliation with the Suomi Synod. In an action to annul this amendment and to restrain affiliation with the Suomi Synod, the court upheld the amendment for change of affiliation. No doubt, the affiliation by acquiescence, without protest over a period of at least ten years, weighed heavily with the court in recognizing the amendment as valid. Unanimous consent may be implied as well as express, and in this respect church corporations are no different from others.

"* * * Although the unanimous consent of the stockholders is essential to a fundamental alteration in the charter of the corporation, it is not necessary that such consent be expressly given." 13 Am. Jur., Corporations, § 88. See, Rock Dell Norwegian E. L. Congregation v. Mommsen, 174 Minn. 207, 219 N. W. 88.

Here, we have a different situation from that in the Rock Dell Congregation case, in that there the purpose stated in the articles of incorporation was for the broad objective of advancing the doctrine of the Norwegian Lutheran Church, according to certain specified standards, without reference or attachment to any particular synod or general church organization. The purpose for which the founders established the Rock Dell church could therefore be satisfied by any organization or synod with substantially the same teachings and principles, and this fact left the congregation free to change affiliation by majority vote. A church established with a broad purpose naturally enjoys a greater freedom of action than a church whose purposes are specific and restricted as to both doctrine and affiliation.

Schradi v. Dornfeld, 52 Minn. 465, 55 N. W. 49, is of similar tenor. At the time of organization a constitution was adopted in which it was stated that the creed of the church was Lutheran and that the pastor should belong to an orthodox synod. It was *recognized* that the Buffalo Synod was orthodox, but it was not specified that the church should necessarily belong to that synod as distinguished from any other orthodox Lutheran synod. Again, we have an example where great freedom of action was enjoyed in changing affiliation from one orthodox synod to another. See, Spenningsby v. Norwegian E. L. Trinity Congregation, 152 Minn. 164, 188 N. W. 217.

It follows that appellant here, whose articles of incorporation and constitution and by-laws definitely provide for an actual affiliation with the State and National Spiritualist Associations, cannot by a majority vote, as against any dissenting member, amend its charter to effect a transfer of affiliation to another organization or effect a diversion of the use of its property to a purpose other than that for which it was organized. In view of the silence of the charters, the constitutions, and by-laws of the state and national associations upon a proposed withdrawal of membership by a subsidiary society, we have given no consideration to the question of whether the consent of either organization to a change of affilia-

tion is of any import, nor is it necessary for us here to do so. See, Russian-Serbian Holy Trinity Orthodox Church v. Kulik, 202 Minn. 560, 279 N. W. 364. Obviously, we are likewise not concerned with the right of a church congregation to change its name. Here, the change of name was only incidental to the unsuccessful attempt to accomplish a change of affiliation.

As to the second issue, the judgment and decree of the trial court must be modified. "The affiliation of a congregation with a synodical body does not pass congregational property to the synod, * * *" (Rock Dell Norwegian E. L. Congregation v. Mommsen, 174 Minn. 207, 211, 219 N. W. 88, 89) or any right therein, and this holds true in respect to the affiliation of any subsidiary church congregation or society with a general church organization, although such affiliation is established as an essential and fundamental part of the original purpose for which the subsidiary congregation or society was founded. Although, as a permissible incident under our statute for the creation of religious corporations, such affiliation may subject the congregation to the rules and regulations of a particular denomination or general church organization, nevertheless the conduct of the congregation's business according to such denominational rules and regulations must be consistent with the constitution and laws of the land; therefore, the conveyance, transfer, or creation of property rights must be not a mere incident to the act of affiliation, but subject to the established modes of conveyance. (See, Russian-Serbian Holy Trinity Orthodox Church v. Kulik, 202 Minn. 560, 275 N. W. 364.) To hold otherwise would leave the determination of rights in church property both precarious and uncertain. We recognize the question that arises with respect to Article 11, *supra,* of appellant's articles of incorporation, providing that if the church ceases to hold meetings for a year, or its membership falls below seven, then its "property, money etc. * * * shall be turned over to the Minnesota State Spiritualist Association to be held in trust by them until such time as this Church shall resume active work." Although this article was undoubtedly inserted to prevent any diver-

sion of church property from the use and fundamental purpose for which the church was established, nevertheless it pertains to a matter of "business management and temporal control" and, as such, may be changed from time to time by a majority vote of the members. There is no evidence to sustain a finding that any occasion has ever arisen whereby this trust provision has been placed into operation or given effect. Pending the time when circumstances calling this provision into operation arise, it is no more effective than a provision for a trust in a will which is ambulatory until the testator dies. Neither the State Spiritualist Association nor the National Spiritualist Association has any present right or interest whatever in or to the property of appellant.

Affirmed as modified.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On February 8, 1946, the following opinion was filed:

PER CURIAM.

Respondent appeals from the clerk's taxation of costs and disbursements awarded to appellant.

Minn. St. 1941, § 607.01 (Mason St. 1927, § 9486), authorizes this court in its discretion to allow costs, not exceeding $25, to the prevailing party, upon judgment in his favor upon the merits, but in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred. See, Rule XV of this court, 212 Minn. xlv.

The trial court adjudged and decreed appellant, "Trinity Church of Infinite Science, whose true name is First Spiritualist Church of Minneapolis," to be "the owner of an estate in fee in the property * * * subject to the rights" of the State Spiritualist Association and the National Spiritualist Association. Upon appeal, the aforesaid judgment and decree was modified by this court, and as so modified it was adjudged that neither the state association nor the national association "has any present right or interest whatever in or to the property of appellant." This modification was made pursuant to this court's determination that the mere act of

affiliating with the State or National Spiritualist Associations on the part of appellant did not thereby create and vest in such state and national associations a property right in appellant's real estate. This court further held that the state association had not acquired any right in appellant's property as a trustee, and that in fact no trust relationship had ever come into being. The action of this court in modifying the judgment and decree removed a cloud from appellant's title. The appellant, by reason of obtaining such modification, was the prevailing party, although the judgment and decree was otherwise affirmed. C. & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 589, 268 N. W. 2, 709, 710; Henry v. Meighen, 46 Minn. 548, 551, and 552, 49 N. W. 323, 646; 2 Dunnell, Dig. & Supp. §§ 2206, 2228.

Respondent's contention that appellant, by reason of its use of the name "Trinity Church of Infinite Science," is not a legal entity and therefore cannot demand or receive costs and disbursements herein is without merit. The judgment and decree, affirmed by this court as modified, specifically determined the true name of appellant, Trinity Church of Infinite Science, to be First Spiritualist Church of Minneapolis, Minnesota. Obviously, the unsuccessful attempt of the applicant to change its name did not destroy its existence as a legal entity.

Insofar as the state and national associations appeared in the action in behalf of appellant, they appeared as volunteers and not pursuant to any regular corporate authorization by appellant. The alleged motives of the parties to the action can have no bearing here in determining the identity of the prevailing party for the purpose of awarding costs and disbursements.

Appellant, as the prevailing party, is allowed its disbursements upon this appeal. Statutory costs, however, are denied, because, in printing the record, appellant has unnecessarily included the summons and certain affidavits of service, and, in some other respects of a minor nature, has printed irrelevant matter. See, Rigby v. Nord, 208 Minn. 88, 292 N. W. 751.

With the exception of the item of $25 as statutory costs, the clerk's taxation is affirmed.